UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BEULAH DAVIS | : | DOCKET NO. 2:11-cv-2015 |
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of Social Security Disability Insurance Benefits and Supplemental Security Income Benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court finds that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income alleging disability beginning on December 15, 2007. Tr. 93-99. The claim was initially denied on August 18, 2008. Tr. 57-60.

Following an administrative hearing held on November 4, 2009, the Administrative Law Judge (ALJ) issued an unfavorable decision on January 26, 2010. Tr. 19-32. In this decision, the ALJ found plaintiff retained the RFC to perform light work with certain restrictions. The ALJ

found that plaintiff could not perform her past relevant work but that there existed other jobs in significant numbers in the national economy that plaintiff was capable of performing. Thus, the ALJ determined that plaintiff was not disabled. *Id.*

Plaintiff filed a request for appellate review of this decision and on September 2, 2011, her request was denied. Tr. 5-8. On November 18, 2011, plaintiff filed suit in this court appealing the determinations of the Commissioner. Doc. 1.

## FACTS AND MEDICAL EVIDENCE

Plaintiff is a high school graduate and was 54 at the time of her hearing. She has secretarial training from Delta Business School. Tr. 257. She testified that she was last employed as a building custodian for the City of Lake Charles. *Id*. She worked at that job for four or five years until approximately 2007 when she stopped due to physical problems with her back. Tr. 258. Prior to her position as building custodian, plaintiff worked as a waitress, records keeper at a bank, and a secretary. Tr. 104. Her longest employment, from July 2001 to December 2007, was as a secretary for the City of Lake Charles. Tr. 95.

Plaintiff testified that she suffers "excruciating" pain in her back which radiates down her left shoulder and into her hand. Tr. 266. She has difficulty grasping things with her left hand due to the pain. *Id.* She stated that she can only stand for fifteen to twenty minutes and she looses her balance when she walks. Tr. 267. She feels pain when sitting, standing, and walking, with sitting being the most painful. *Id.* When she sits her lower back has a burning sensation which radiates to her legs. *Id.* Plaintiff testified that she does not drive and needs help getting dressed and preparing meals. Tr. 268-69.

When asked how she spends her day, plaintiff responded that she "sit[s] in her house." Tr. 264. She believes that she has suffered from depression for "quite some time." *Id.* She

stated that she gets nervous around people, does not get along well with others, has concentration and memory problems, has had trouble with loss of temper, has feelings of guilt, and feels that she is no longer needed. Tr. 264-65. She further stated that she does not sleep, does not eat like she used to, and hears things at night. *Id.*

Plaintiff mentioned several different medications she is taking and stated that one she takes during the day "puts [her] to sleep." Tr. 263. Another medication she claims causes an accelerated heartbeat. *Id.*

The medical evidence submitted shows that plaintiff has complained of back pain since 2007. She was seen by Dr. Melvin Morris at the M&M Family Clinic, Inc. on April 12, 2007, at which time it was noted that she complained of continued back pain and would like to schedule surgery.

Plaintiff was treated by Dr. James Eddy for pain management from July 2007 through May of 2008. On a July 27, 2007, office visit plaintiff complained of lower back pain that was aggravated by rainy weather and driving. She reported that she was having trouble sleeping. It was noted that she was experiencing anxiety and feeling sad more than usual. Her judgment, insight, memory, mood, and affect were normal. Dr. Eddy noted that a 2006 discogram was positive for L4-5. Her diagnosis was intervertebral disc disorder, degenerative disc disease and neuritis or radiculitis. He advised her to return to Dr. Erich Wolf, a neurosurgeon. Tr. 169-70.

On September 18, 2007, plaintiff was seen by Dr. Erich Wolf. She reported that pain in her lower back was severe, her need for pain medication had increased, and the pain interfered with her sleep. Dr. Wolf noted that plaintiff had failed aggressive conservative care and that she suffered from chronic lumbar discogenic pain at L5-1 and L4-5. He recommended transforaminal lumbar interbody fusion at L5-1 and L4-5. Tr. 173-74.

Plaintiff underwent surgery on December 28, 2007. At a follow up visit on January 4, 2008, it was noted that plaintiff was doing well and her back pain was eighty-five percent resolved. Tr. 178-79. She did complain of slight leg pain. On February 11, 2008, six weeks post-surgery, plaintiff stated that her leg pain had resolved. She complained of pain and a knot over the area where she had surgery. She stated that she feels she is only twenty percent improved. It was noted that plaintiff was not wearing her brace as was prescribed. Tr. 180-81.

On March 24, 2008 plaintiff was three months post-surgery and Dr Wolf noted that she was doing fair. Plaintiff stated that her pain has not improved since surgery. She was advised to return in three months. Tr. 182-83. On June 23, 2008, plaintiff complained of pain in her low back region. She reported that she slipped and fell in the rain on the previous Saturday. Her x-rays showed good alignment of the hardware and an incomplete anthrodesis. Plaintiff advised that she was no longer satisfied with Dr. Eddy for pain management so Dr. Wolf referred her to Dr. Lopez. She was advised to return to Dr. Wolf in three months. Tr. 184-85. The record does not contain evidence of any further follow-up from Dr. Wolf.

While still under pain management with Dr. Eddy and on January 18, 2008, plaintiff reported she was having post-operative pain and on that morning the pain was mild. She indicated that she was taking six Percocet a day for pain. Tr. 155-56. On February 1, 2008, plaintiff stated that her pain was a 4 on a scale of 10. It was noted that she was a month out of surgery and still taking large amounts of Percocet and spending a lot of time in bed. According to the medical records, Dr. Wolf's plan was to reduce her dosage of Percocet next month. Tr. 152-53. At her February 29, 2008, appointment, plaintiff reported that the screw on the right side of her back was hurting and that she was having trouble sleeping because of that. It was noted that she appeared depressed. Tr. 149-50. On March 31, 2008, plaintiff reported her pain

as seven on a scale of ten. She had been out of pain medicine for two days. She complained of pain radiating down the posterior of her left leg to her thigh. Dr. Eddy noted that she was not "at all obtunded today." Tr. 147-48.

On April 28, 2008, plaintiff described her pain as a four on a scale of ten. She reported having trouble sleeping because she was out of the prescription Valium that helped her sleep. She reported falling at her daughter's house. Dr. Eddy wrote her a prescription for Valium and reduced the strength of her Percocet. On May 23, 2008, plaintiff reported that her pain was five on a scale of ten with pain increasing at night time. Dr. Eddy noted that she was "more alert and just looks better today." He reduced the dosage of her Percocet with the goal for her to only use it when her pain is at its worst. There is no further evidence of any follow up with Dr. Eddy.

Plaintiff underwent a State agency residual functional capacity assessment ("RFC") on August 8, 2008. She was assigned a light RFC with limitations of occasionally lifting twenty pounds and frequently lifting ten pounds, standing and/or walking for six hours in an eight hour work day, sitting for a total of six hours in an eight hour work day, and no limitation on pushing and/or pulling. She was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling and completely restricted from climbing ladders, ropes and scaffolds. No other limitations were indicated. Tr. 190-96.

On August 11, 2008, plaintiff underwent a State agency psychiatric assessment. Dr. Pamela D. Martin reviewed the medical records from Dr. Morris, Dr. Wolf, and Dr. Eddy and determined that there was no evidence of any medically determinable impairment. She noted that although plaintiff made allegation of depression and anxiety with an onset date of December 5, 2007, plaintiff had no formal diagnosis of a mental health condition and had never been prescribed psychotropic medications for a mental health condition. Tr. 199-213.

On May 15, 2009 plaintiff was evaluated by G. Jon Haag, Psy.D. on referral from her non-attorney representative. Plaintiff reported that she had no history of and was not currently receiving psychiatric treatment. She reported that chronic pain and problems concentrating prevented her from working. Dr. Haag noted that she appeared depressed but there was no evidence of active psychosis. Based on her mental status exam and his interview, he concluded that her memory was mildly impaired, concentration severly impaired, and cognitive functioning average. Dr. Haag administered the Minnesota Multiphasic Personality Inventory – Second Edition. ("MMPI-II") He reported that her validity scale had a prominent elevation on the F scale which rendered the testing un-interpretable. His diagnostic impression was major depressive disorder, single episode, severe. He concluded that plaintiff was able to understand and follow simple instructions but complex or multi-stepped instructions were beyond her capability due to her problems with concentration. He found her capable of handling her own funds and estimated that her prognosis was good with treatment. Tr. 217-19.

Dr. Haag's medical source statement completed on June 2, 2009, noted a slight impairment in plaintiff's ability to understand short, simple instructions, in her ability to carry out short, simple instructions, and her ability to make judgments on simple work-related decisions. He noted marked impairments in her ability to understand and remember detailed instructions and her ability to carry out detailed instructions. He further opined that she had slight impairments in her ability to interact with the public, supervisors, and the community and moderate limitations in her ability to respond appropriately to work pressures in a usual work setting and her ability to respond appropriately to changes in a routine work setting. Tr. 220-21.

Plaintiff underwent a psychological re-evaluation conducted by Jerry L. Whiteman, Ph.D. on November 6, 2009. He noted that a prior psychological evaluation and administration of an

MMPI-II conducted on October 20, 2009, had suggested the possibility of distortions or exaggerations.[1] In his November 6, 2009, report he noted that plaintiff does not drive, has trouble sleeping, difficulty concentrating, and that pain impairs her persistence. Her cognitive abilities appeared within normal limits. Tr. 223-25.

Dr. Whiteman re-administered the MMPI-II to plaintiff and determined that plaintiff was complaining, pessimistic, and could be demanding of attention. He noted that she feels depressed and self-critical. She has tendencies toward suicidal ideation when feeling hopeless. She is resistant to psychological intervention. She is angry, rebellious, resentful of rules and tends to be egocentric and unreliable. She is suspicious and hostile toward people in authority. Dr. Whiteman's diagnostic impression was pain disorder, bipolar disorder, depressed, and avoidant and schizotypal personality features. Tr. 223-25.

A medical source statement completed by Dr. Whiteman on October 27, 2009, indicated that plaintiff has slight impairments in her ability to understand and remember short, simple instructions and in her ability to carry out simple instructions. He indicated a marked limitation in her ability to understand and remember detailed instructions, carry out detailed instructions and make judgments on simple work-related decisions. He further noted moderate limitation in her ability to interact appropriately with the public and with supervisors and marked limitations in her ability to interact appropriately with co-workers, respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting.

In a medical source statement dated November 9, 2009, Dr. Whiteman noted slight impairments in plaintiff's ability to understand and remember short, simple instructions and in her ability to carry out simple instructions. He assessed moderate limitation in her ability to understand and remember detailed instructions and carry out detailed instructions and marked

---

[1] A report from the October 20, 2009, evaluation has not been admitted into evidence.

limitations in her ability to make judgments on simple work-related decisions.  He indicated that plaintiff had moderate limitations in her ability to interact with the public, supervisors, and co-workers and marked limitations in her ability to respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting.  Tr. 13-14.

Based on the medical evidence, the ALJ found that plaintiff suffered from the severe impairments of "lumbar disc disease; hypertension; major depressive disorder (20 CFR 404.1520(c) and 416.920(c))."  Tr. 24.  The ALJ additionally found that plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms but determined that plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC of light work with certain limitations.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'"  *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial

evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## LAW AND ANALYSIS

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[2]; (3) whether the claimant's

---

[2] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

>impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; Social Security Ruling 96-8p. The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations. 20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p. The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or

her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at step five of the sequential analysis. Specifically, the ALJ found, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work in significant numbers in the national economy." Tr. 32.

In her appeal plaintiff argues that substantial evidence does not support the ALJ's decision. Specifically, she sets forth the following arguments:

(1) The ALJ mechanically applied the "closely approaching advanced age" category (20 CFR 404.152(d)) in this matter and failed to recognize that plaintiff, at age 55, once limited to light work, met the disability requirements of grid rule 202.06.

(2) The ALJ failed to fully and fairly develop the facts and prejudice resulted.

(3) The ALJ posited a defective step five hypothetical and improperly restricted plaintiff's cross-examination of the vocational expert.

**I. Did the ALJ err is mechanically applying the age categories as set out in the Medical–Vocational Guidelines?**

Plaintiff argues that on January 26, 2012, the date of the ALJ's decision, she was thirty-eight days from reaching her 55th birthday. She submits that instead of being classified as a person "closely approaching advanced age" as defined in 20 CFR 404.1562(d)), the ALJ should have classified her as a person of "advanced age" as defined in 20 CFR 404.1562(e).

Plaintiff cites the case of *Jolly v. Barnhart,* 465 F.Supp. 2d 498 (D.S.C. 2006) and argues that since she was in a borderline age situation the ALJ should not have mechanically applied the age categories to deny benefits. Plaintiff requests that in "this borderline age case" the matter be reversed and remanded for a determination of whether plaintiff was disabled within a few months of her 55th birthday.

The Commissioner maintains that simply because plaintiff was approaching the next age category does not mandate that the ALJ apply the higher age category. Citing the Fifth Circuit cases of *Harrell v. Bowen,* 862 F.2d 471, (5th Cir.1988) and *Underwood v. Bowen,* 828 F.2d 1081, 1082 (5th Cir.1987) the Commissioner argues that the ALJ is given great latitude in determining how to apply age classifications under the regulations. As stated in *Underwood*:

> The regulations provide that in borderline cases, the age classifications should not be applied mechanically. 20 C.F.R. 404.1563(a) (1987). The Secretary is vested with considerable discretion in this application and we perceive no abuse of that discretion in the refusal to consider [claimant] in the older category.

*Id.* This language does not indicate that application of the borderline age rule is automatic; rather it allows the ALJ discretion to consider the next age category after considering the specific facts of each particular case.

Other than the fact that plaintiff was approximately 38 days from her 55th birthday when the ALJ's decision was issued she presents nothing to support her argument that the ALJ erred in finding her to be a person "approaching advanced age." Here, the ALJ did not "mechanically" apply the age classifications. The ALJ noted that plaintiff has a varied work history although the demands of her past work exceed her RFC. Tr. 30. The ALJ also considered the fact that plaintiff has a high school education and secretarial training. Tr. 27. Ultimately, the ALJ determined that the RFC of light work with limitations was supported by the evidence and based on testimony from a vocational expert, found that there were occupations which plaintiff could perform existing in the national economy in significant numbers. Tr. 26.

Plaintiff additionally argues that her subsequent award of benefits on an application filed on January 19, 2011 (a year after this decision was issued) should be an "implicit" finding that the ALJ mechanically applied the age categories. We reject this argument.

The limited role of the Court on judicial review is to determine whether there is substantial evidence in the entire record to support the fact findings or decision of the ALJ. *Allen v. Schweiker,* 642 F.2d 799 (5th Cir.1981). If supported by substantial evidence, the ALJ's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Wilkinson v. Schweiker,* 640 F.2d 743 (5th Cir.1981).

In a case cited by the Commissioner, *Winston ex rel. D.F. v. Astrue*, 341 F. App'x 995, (5th Cir. 2009), the Fifth Circuit has stated:

> Whether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious *at the time of consideration.* Here, the ALJ determined that the evidence at the time indicated [claimant] was not disabled. We may disturb this judgment only if there is a conspicuous absence of credible choices or no contrary medical evidence.

*Id.* at 998.

For these reasons we find this argument to be without merit.

**II.     Did the ALJ fail to fully and fairly develop the facts?**

Plaintiff argues that by refusing to order a post-hearing consultative orthopedic examination, plaintiff was denied the opportunity to obtain testimony from a medical expert regarding the onset of her disability. She additionally argues that by denying a post-hearing examination, the ALJ denied her the right to request another hearing and to subpoena the medical examiner to testify.

The record reflects that at the hearing the plaintiff's non-attorney representative asked the ALJ to order both a consultative orthopedic and psychological examination. Tr.284. The ALJ refused to grant the psychological examination based on the fact that there was no history of any treatment by plaintiff for psychological issues. Concerning the orthopedic examination, the ALJ stated "I'm considering that consultative examiner on the orthopedic." Tr. 285. At the close of

the hearing the non-attorney representative re-urged his request for a consultative orthopedic examination which the ALJ granted. Tr. 289.

However, when the non-attorney representative expressed to the court that he would reserve his right to ask for a supplemental hearing the ALJ withdrew her order granting the consultative orthopedic examination. Tr. 290, 295. The ALJ noted that she was concerned that the non-attorney representative was asking for a consultative examination solely for the purpose of receiving a new hearing. Tr. 291. The ALJ explained that it was the responsibility of the plaintiff to fully develop the record and that she had not submitted any updated medical records. Tr. 294. The ALJ further determined that she was going to base her decision in this case on the record that was before her. Tr. 295.

The claimant has a burden of proving his disability by establishing a physical or mental impairment. *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir.1985). Section 20 CFR 404.1512(a) provides:

> In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

If sufficient medical or other evidence is not provided by the claimant, the ALJ is required to make a decision based on the information available. 20 CFR § 404.1516. In some circumstances, for example if there is insufficient evidence to make a disability determination, a consultative examination may be ordered. 20 CFR § 404.1517 (1986).

The ALJ's decision to order a consultative examination is discretionary. *Gutierrez v. Barnhart*, 04-11025, 2005 WL 1994289 (5th Cir. Aug. 19, 2005) (citing *Jones v. Bowen,* 829

F.2d 524, 526 (5th Cir.1987)) ("The decision to require such an examination is discretionary... '[T]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision.' ").

Here, the ALJ based the disability determination on plaintiff's testimony, her credibility, and medical evidence that demonstrated a lack of psychological treatment and the capability of preforming light work. The ALJ's decision to order a consultative examination is discretionary and the court finds that the ALJ in this case had sufficient evidentiary bases for rendering the determination without such an examination.

**III. Did the ALJ ask a defective step five hypothetical question and improperly restrict plaintiff's cross-examination of the vocational expert.**

Plaintiff argues that the hypothetical question the ALJ asked the vocational expert was defective because it compelled the vocational expert to make assumptions that were not supported by the record, specifically the medical records of psychologists Haag and Whiteman. The second hypothetical question asked the vocational expert to consider the postural limitations given in the first hypothetical and add the following mental limitations:

> the individual would be able to understand, remember, and carry out simple instructions and make judgments on simple work related decisions, and … no limitation on the ability to interact with the public, supervisors, or coworker's [sic]; and they could respond appropriately to the usually [sic] work situations and changes in a routine work setting …

Tr. 277-78.

Plaintiff argues that this question was improper because it ignored the marked limitations found in both psychological medical source statements completed by psychologist Whiteman who found marked limitations in plaintiff's ability to make judgments on simple work-related

-15-

decisions, interact appropriately with co-workers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting.

The hypothetical question that an administrative law judge poses to a vocational expert need only incorporate the disabilities that the administrative law judge recognizes. *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir.1994). If the administrative law judge's hypothetical omits a limitation "and the claimant or his representative is afforded the opportunity to correct deficiencies in the administrative law judge's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the administrative law judge's findings and disabilities recognized but omitted from the question)," there is no reversible error. *Id.* at 436.

Here the ALJ considered plaintiff's mental condition. Specifically, the ALJ found that there was no evidence presented of any mental health treatment and the State psychiatric review technique completed on August 11, 2008 found no evidence of a medically determinable mental impairment. Tr. 28, 29. The ALJ also considered the evaluations, reports and medical source statements of Drs. Haag and Whiteman.

The ALJ gave "considerable weight" to the State agency psychological consultant's finding of no medically determinable impairment as such finding was consistent with the absence of any medical health treatment. Tr. 29. The ALJ noted that neither Dr. Haag nor Whiteman was a treating source whose opinion would be entitled to controlling or significant weight. *Id.* The ALJ commented that Dr. Haag noted in his report that plaintiff had an elevated F scale which indicated exaggeration and rendered the testing un-interpretable. Tr. 28-29. Further, the ALJ noted that while the medical source statements of Drs. Haag and Whiteman were completed within a close period of time they contained inconsistent degrees of limitations.

The ALJ gave the opinions of Drs. Haag and Whiteman some credit finding "that the claimant is only slightly impaired in her ability to understand, remember, and carry out short, simple instructions and that her mental limitation would not significantly impact the ability to perform unskilled work." Tr. 30.

As is apparent from above, the hypothetical question posited to the vocational expert in this case was not defective as the question reasonably incorporated all of the limitations recognized by the ALJ. The ALJ here asked the vocational expert a hypothetical question that included the RFC that she found was supported by the record. Further, plaintiff's non-attorney representative was given the opportunity to cross-examine the vocational expert and suggest any defects in the hypothetical question. We therefore find this argument without merit.

Plaintiff additionally argues that the ALJ improperly limited the scope of her non-attorney representative's cross-examination of the vocational expert. Relying on the case of *Pickens v Astrue,* 2009 WL 2914172 (W.D. La. Sept.10, 2009), plaintiff argues that she was prejudiced when the ALJ refused to allow her non-attorney representative to ask questions using the terms "marked" and "moderate" as contained in Drs. Haag and Whiteman's medical source statements.

After reviewing the *Pickens* case cited by plaintiff, this court finds that it does not support her position. In *Pickens,* the court found that the ALJ improperly refused to consider the opinions of two psychologists who examined plaintiff after the date that his insured status had expired. The court noted that the ALJ cannot "rely *only* on evidence that supports his decision." *Id.* at *8. This opinion in no way stands for the proposition that a claimant should be allowed to question a vocational expert using the terms "moderate" and "marked" or any other medical terminology.

At the hearing the plaintiff's non-attorney representative was given the opportunity to cross-examine the vocational expert. However, when he attempted to ask the expert a question using the term "moderate" as used on a medical source statement, the ALJ asked him to define "moderate" so as to phrase it in a manner in which the vocational expert could answer. Tr. 298. The ALJ stated:

> I'm not going to permit the question unless you translate moderate into something that is a vocational limitation, in other words, anything that OSHA, or a Department of Labor, or in the Dictionary of Occupational Titles would use in a job setting, those are generally limitations in terms of time such as frequently, occasionally, never, one hour, 15 minutes, etc.

Tr. 299-300. The ALJ explained that the vocational expert is not qualified to make a determination based on medical terms. Tr. 301. The ALJ also explained to the non-attorney representative that he could proceed with his questioning if he interpreted the terms "moderate" and "marked" into "occasional, frequent, never, or any time limitation," in other words, something that was within the realm of the witnesses expertise. Tr. 301-04. Plaintiff's non-attorney representative claimed to understand the ALJ's ruling but at the end of the hearing objected to the ALJ's ruling as denying his client a "full and fair hearing." Tr. 306.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir.1986). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995), (citing *Fields*, 805 F.2d at 1170). As stated in the Hearings, Appeals, and Litigation Law manual (HALLEX) I-2-6-7C, Questioning the VE (Vocational Expert):

> The claimant and the representative have the right to question the VE fully on any pertinent matter within the VE's area of expertise. However, the ALJ will determine when they may exercise this right and the appropriateness of any questions asked or answers given. For example: …The ALJ will not permit a VE

to respond to questions on medical matters or to draw conclusions not within the VE's authority …

It was clearly within the ALJ's authority to limit the cross-examination of the vocational expert in this case. Plaintiff's non-attorney representative was afforded the opportunity to question the expert in terms that were within a vocational expert's area of expertise but when he attempted to phrase the question to the vocational in medical terms, the ALJ was correct to cease his questioning. We find no merit to this argument.

## CONCLUSION

Substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff was not disabled. Therefore, it is RECOMMENDED that the ALJ's decision be AFFIRMED and this matter DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers this 18th day of July, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE